Lance Croffoot-Suede
Brendan J. Murphy
Linklaters LLP

1345 Avenue of the Americas
New York, NY 10105
212 903 9000 (Tel)
212 903 9100 (Fax)

Attorneys for Linda Loving

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| The United States of America,<br><br>                          Plaintiffs,<br><br>                  v.<br><br>Linda Loving,<br><br>                          Defendants. | 07 -cr-00395-PAC |

## SENTENCING MEMORANDUM ON
## BEHALF OF LINDA LOVING

Linda Loving ("Ms. Loving"), by her undersigned attorneys, Linklaters LLP, respectfully submits this Sentencing Memorandum (the "Memorandum"), and the attached exhibits, to assist this Court in determining her sentence at the sentencing hearing scheduled for December 5, 2007. The purpose of this Memorandum is to apprise the Court of a number of factors relevant to the determination of an appropriate sentence under the provisions of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").

On August 9, 2007 Ms. Loving signed a plea agreement with the United States Attorney's Office for the Southern District of New York (the "Plea Agreement") and pled guilty before this Court to theft of public funds in violation of 18 U.S.C. §§ 641 and 642. On November 28, 2007 the Probation Office submitted its Presentence Investigation Report ("PSR"). (Ex. A). As set forth in the Plea Agreement and the PSR, Ms. Loving's applicable sentencing range is 0 – 6 months, her applicable fine range is $1,000 to $10,000 and she is required to pay restitution. For all the reasons set forth herein, the defense requests that Ms. Loving receive a sentence of probation and be ordered to pay nominal restitution.

## BACKGROUND

Ms. Loving's story is as simple as it is short. At a time in her life when she was struggling to pay her bills and provide for her son, Ms. Loving succumbed to temptation. She was presented with an illegal opportunity to supplement her income and, unfortunately, she seized the opportunity. Ms. Loving regrets her decision, understands what she did was wrong and takes full responsibility for her actions.

Linda Loving was born on February 16, 1958 in Brooklyn, NY. She was one of three children born to Edward Loving and Nancy Dutton. Although Ms. Loving's father did not play a role in her life, she was raised in a stable and loving environment. Ms. Loving went on to graduate from Theodore Roosevelt High School in the Bronx, NY. She then pursued an

A08666117/0.0a/28 Nov 2007

undergraduate education and obtained a bachelor's degree in accounting at Mercy College in the Bronx, NY. Since then, Ms. Loving has consistently been gainfully employed. After working as a bookkeeper in the accounts department of Master Trouser Corporation for five years, and the U.S. Postal Service for ten years, Ms. Loving gathered her life savings and decided to begin a real estate business in 1998.

Ms. Loving has been a real estate broker in New York for approximately ten years. Her business has focused primarily on helping low income renters or homeless women in the Bronx locate suitable housing. Ms. Loving worked with New York City's Housing Stability Plus Program and other federal and state programs aimed at inducing landlords to lease a certain number of housing units to people of modest means.

In 1997, Ms. Loving gave birth to James Loving Thomas, her only child. "[Ms. Loving] and James have a very close relationship." (Ex. B). Ms. Loving and James's father never married and James's father has never played any role in his life, financial or otherwise. Ms. Loving has been the sole caregiver and provider for James since his birth.

James is not the only person who depends upon Ms. Loving. The people in Ms. Loving's life describe her as a caring and patient woman whose supportive nature and generosity of spirit have helped them through the small and large problems of their lives. Ms. Dejesus, suffering from an ailment that leaves her with an unusable foot, explains that Ms. Loving "is one of the rare people in [her] life that [she] can call on to assist [her]" with grocery shopping or volunteer work at her church. (Ex. A). Ms. Loving's mother, Nancy Loving, also describes how invaluable Ms. Loving's positive energy and caring personality is to her. (Ex. E). Nat Dixon explains how Ms. Loving's counsel and friendship helped him focus his life and his energies in

more constructive directions, while Marilyn Malloy stresses how Ms. Loving has always brought hope and positive energy into her life no matter how difficult or dire the situation.  (Exs. C, F).

## I.    CIRCUMSTANCES SURROUNDING THE INSTANT OFFENSE AND FACTORS RELEVANT TO DETERMINING THE SENTENCE

### A.    The Instant Offense

On May 17, 2007 Ms. Loving was arrested and arraigned for theft of public funds in violation of 18 U.S.C. §§ 641 and 642.  Ms. Loving and her codefendant, Rapheal Agbune, embezzled $25,750 in Housing Stability Plus subsidies by falsely claiming that Ms. Loving acted as a broker at certain real estate transactions.  Ms. Loving was appointed counsel by the court and released on her own recognizance.  On August 9, 2007, Ms. Loving pled guilty to theft of public funds in violation of 18 U.S.C. §§ 641 and 642 before this Court.

### B.    Offense Level Computation

The calculation of the offense level was conducted in accordance with the November 1, 2006 edition of the U.S.S.G.  The Base Offense Level for a violation of 18 U.S.C. 641 is six points, pursuant to U.S.S.G. §2B1.1.  Since the loss caused by Ms. Loving's actions exceeded $10,000, a four level increase is applied, pursuant to §2B1.1(b)(1)(C).

Based on Ms. Loving's allocution before this Court accepting responsibility for her actions and her timely notification of her intention to plead guilty, Ms. Loving is entitled to a downward adjustment of two levels pursuant to §3E1.1(a).  Consequently, the total offense level for the instant offense is eight.

Ms. Loving has no prior criminal conviction of any kind and therefore qualifies for the lowest possible criminal history category, *i.e.* Criminal History Category I.  In accordance with a Total Offense Level of eight and a Criminal History Category of I, Ms. Loving is eligible for 0 – 6 months in prison.

## II.    MS. LOVING SHOULD BE SENTENCED TO A TERM OF PROBATION

A defendant is probation eligible when their applicable guideline range is in Zone A of the sentencing table. U.S.S.G. § 5B1.1(a)(1). Probation is a suitable alternative to imprisonment when "... the terms and conditions of probation can be fashioned so as to meet fully the statutory purposes of sentencing, including promoting respect for the law, providing just punishment for the offense, achieving general deterrence and protecting the public from further crimes by the defendant." U.S.S.G. Part B – Probation, Introductory Commentary.

Ms. Loving agrees with the PSR's recommendation of probation in lieu of any jail time. (Ex. A). In fact, few cases could be more appropriate for probation than Ms. Loving's. As an initial matter, with a Total Offense Level of eight and a Criminal History Category of I, she is within Zone A of the Sentencing table and therefore probation eligible. As for the statutory considerations when imposing probation instead of prison - punishment, deterrence and protection of the public- any combination of terms or conditions of probation would satisfy these requirements.

As for punishment, in addition to the punitive nature of the terms and conditions of probation, Ms. Loving's plea carries a harsh sentence, *i.e.* the potential loss of her career. A guilty plea to theft of public funds in connection with a real estate transaction may very well end Ms. Loving's career as a real estate agent and force her, at 50 years of age, to seek an alternate career.

Ms. Loving poses no danger to the public. Apart from this offense, for which she has accepted responsibility and expressed complete remorse, she has no criminal history whatsoever. A fifty year old mother of a minor child attempting to earn a living poses no threat to the public.

Lastly, and most important, Ms. Loving is the sole caregiver and provider for her son James. James is a bright young boy whom Ms. Loving is trying to steer through school and life on her own. A jail sentence would place immeasurable stress on James and punish him for his mother's bad decisions. A sentence of probation, however, will allow her to continue to be a financial and familial support for James while at the same time serving a price for her criminal activity.[1]

## III.    A FINE IS NOT APPROPRIATE FOR MS. LOVING

Under the Guidelines, Ms. Loving's offense level is 8 (see Section I.B, above), making her eligible for a fine of between $1,000 and $10,000. See U.S.S.G. § 5E1.2(c)(3)(A). Ms. Loving agrees with the PSR's recommendation of no fine. (Ex. A at 14). The Guidelines, however, provide that, "if the defendant establishes that (1) she is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the Guidelines, or (2) imposition of a fine would unduly burden the defendant's dependants, the court may impose a lesser fine or waive the fine." U.S.S.G. § 5E1.2(e). The Guidelines also require the Court to consider an order to pay restitution when deciding if a fine is necessary. U.S.S.G. § 5E1.2(d)(4). As set forth above and in her PSR, Ms. Loving has no assets and very little income net of her necessary expenses. Furthermore, as a result of her plea of guilty, Ms. Loving will most likely lose her ability to continuing selling real estate or renting apartments. Imposing a fine in addition to any restitution this Court may order is out of step with Ms. Loving's ability to pay and would unnecessarily burden her ability to provide for herself and her minor son.

---

[1]    Should the Court feel that the purposes of sentencing expressed in 18 U.S.C. § 3553(a) and the Introductory Commentary to Part B – Probation are not met by a term of probation, Ms. Loving is amenable to any of the Additional Conditions expressed in U.S.S.G. § 5B1.3(e)(1)-(5) or any other condition in keeping with U.S.S.G. § 5B1.3(b) in preference to incarceration.

As a further indication of Ms. Loving's present and future inability to pay a fine, Ms. Loving was appointed counsel in this case. As the Commentary to the Guidelines states, "the fact that a defendant is represented by assigned counsel [is a] significant indicator of present ability to pay any fine. In conjunction with other factors, [it] may also indicate that the defendant is not likely to become able to pay any fine." U.S.S.G. § 5E1.2 (Commentary Note 3).

If the Court decides that Ms. Loving is not entitled to complete waiver of a fine, we respectfully submit that the Court should substitute an alternative sanction of community service. Pursuant to U.S.S.G. § 5E1.2(e), this Court may consider alternative sanctions "in lieu of all or a portion of the fine" and "community service is the generally preferable alternative in such instances."

## IV.    MS. LOVING'S PAYMENT OF RESTITUTION SHOULD BE NOMINAL

Ms. Loving is required to pay restitution in accordance with 18 U.S.C. 3663A and 18 U.S.C. 3664. However, the Guidelines do not require the Court to order restitution for the full amount at issue. As set out in U.S.S.G. § 5E1.1 (f),

> "A restitution order may direct the defendant to make nominal periodic payments if the court finds from the facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments."

In 1995, in considering what was to become the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, the Senate Committee on the Judiciary was of the view that even "nominal restitution payments" serve "the potential penalogical [sic] benefits of requiring the offender to be accountable...." S. Rep. 104-179, at 18 (1995), reprinted in 1996 U.S.C.C.A.N. 924, 931.

Ms. Loving's financial situation does not allow for the full payment of restitution at this time nor under any reasonable schedule of payments. By pleading guilty, Ms. Loving likely has eliminated her ability to continue with her real estate business. As such, in the coming months Ms. Loving is going to struggle to start a new career and rebuild her financial situation at the age of 50. Burdening her with a joint and several order for $25,750 in restitution would needlessly impede her rehabilitation and quite possibly prevent her recovery altogether. A monthly nominal payment of $50 for the term on her probation would stress the severity of her crime and allow the Housing Stability Plus Program to regain a portion of its lost funds, while at the same time balancing the impact a restitution order would have on Ms. Loving and her son.[2]

---

[2]    If this Court determines an order of restitution in excess of nominal restitution is appropriate, Ms. Loving requests that the Court allow for as extended a payment period as allowable under 18 U.S.C. § 3664 (e)(3)(a).

A08666117/0.0a/28 Nov 2007

## CONCLUSION

For the reasons set forth above, Ms. Loving respectfully requests that the Court impose a sanction in line with the PSR and sentence Ms. Loving to probation and require nominal restitution.

Dated:      New York, New York

            November 28, 2007

                                      Respectfully submitted,

                                      Linklaters LLP

                                      By:
                                      Lance Croffoot-Suede
                                      Brendan J. Murphy
                                      1345 Avenue of the Americas, 19th floor
                                      New York, NY 10105
                                      (212) 903-9000
                                      (212) 903-9100 (fax)

                                      Attorneys for Linda Loving